

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **PLEAS J. SMITH,** | ) | |
| Plaintiff, | ) ) ) | Case No. 06 C 4250 |
| v. | ) ) ) | Magistrate Judge Martin C. Ashman |
| **VILLAGE OF NORRIDGE, et al.,** | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Pleas J. Smith ("Smith") has sued Defendants, the Village of Norridge ("Norridge"), Harlem-Irving Companies ("Harlem-Irving"), and Intrigue Jewelers ("Intrigue"), for injuries he allegedly sustained at the hands of individuals employed as security guards and police officers by Harlem-Irving and Norridge. The injuries allegedly resulted from an altercation at Intrigue's store, which is located in the Harlem-Irving Plaza shopping center. Harlem-Irving, which owns the shopping center, has filed a cross-claim against its tenant, Intrigue, seeking to force Intrigue to indemnify, defend, and hold Harlem-Irving harmless pursuant to two provisions of Intrigue's lease agreement. Currently before the Court is Intrigue's motion to dismiss Harlem-Irving's cross-claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. All parties have consented, pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, to have this Court decide any and all matters in this case, including the entry of final judgment. For the reasons that follow, Intrigue's motion to dismiss is denied.

## I. Background

According to his amended complaint, Pleas Smith purchased a ring from Intrigue on the morning of September 17, 2005. (Amended Compl., ¶ 6.) He claims that he spoke to employees of Intrigue about having the ring re-sized and was told that he could have the ring re-sized and pick it up later in the day. (*Id.*) When Smith returned to Intrigue at approximately 4:00 p.m. that day, he was told that he could not have the ring because it was not ready. (*Id.*, ¶ 7.) Smith protested and demanded that Intrigue return his money; Intrigue refused and called security personnel, who were employed by Harlem-Irving. (*Id.*, ¶¶ 7, 8, 10.) Smith alleges that Harlem-Irving's security officers came to Intrigue's store and "attacked and assaulted him" before turning him over to police officers from the Village of Norridge, who also attacked him. (*Id.*, ¶¶ 11-14.) Smith seeks damages under 42 U.S.C. §1983, alleging that Harlem-Irving, Intrigue, and Norridge engaged in a conspiracy to violate his constitutional rights. (*Id.*, ¶¶ 45-51.) He also seeks to recover on several common-law tort theories, alleging that Harlem-Irving and Intrigue are liable for false imprisonment (*Id.*, ¶¶ 58-60.), malicious prosecution (*Id.*, ¶¶ 61-62.), intentional infliction of emotional distress (*Id.*, ¶¶ 63-66.), and assault and battery. (*Id.*, ¶¶ 74-76.)

Harlem-Irving subsequently filed a cross-claim against Intrigue seeking a judgment in an amount equal to Harlem-Irving's costs and fees associated with this case as well as any amount that Harlem-Irving might be ordered to pay Smith. Harlem-Irving's cross-claim is based on two provisions of its lease agreement with Intrigue. Article 24 of the lease provides that Intrigue will indemnify, hold harmless, and defend Harlem-Irving "against any and all demands, claims, actions, damages, costs and expenses . . . arising from the conduct or management of the business

conducted by Tenant." (Harlem-Irving's Amended Cross-Claim, Ex. C.) Article 23 of the lease states that Intrigue will "provide and maintain a Broad Form Commercial Liability Policy of insurance" that will protect Harlem-Irving "against any liability which arises from any occurrence on or about the Leased Premises." (*Id.*) Based on these provisions, Harlem-Irving claims that it is entitled to have Intrigue pay its costs in defending this lawsuit and any damages that might be awarded. Intrigue does not dispute that these provisions are part of its lease agreement with Harlem-Irving; however, Intrigue argues that the provisions are void under the Illinois Landlord and Tenant Act, 765 ILCS 705/1 *et seq*.

## II. Discussion

Federal Rule of Civil Procedure 12(b)(6) provides that a cross-claim may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all well-pleaded facts in the cross-claim as true and views them in the light most favorable to the cross-claimant. *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). The focus is on the sufficiency of the pleadings; in order to avoid dismissal, the cross-claimant's allegations "must plausibly suggest that the [cross-claimant] has a right to relief." *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). The motion will be granted when the claim is "deficient on its face, without reference to other pleadings or exhibits." *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). When a claim, like the cross-claim at issue here, is based on a contract, and the contract is appended as an exhibit, that contract is treated as part of the "face of the complaint."

*See Doe v. First Nat'l Bank of Chicago*, 865 F.2d 864, 873 (7th Cir. 1989). With respect to substantive law issues, the parties agree that Illinois contract law governs Harlem-Irving's claim.

Harlem-Irving's breach of contract claim against Intrigue, as pleaded in the amended cross-claim, relies on two separate provisions of the lease agreement between Harlem-Irving and Intrigue. The Court addresses them in turn.

### A. Article 24

Harlem-Irving's cross-claim is based in part on Article 24 of the lease agreement, which provides that Intrigue must "[i]ndemnify and save Landlord . . . harmless from and defend against any and all demands, claims, actions, damages, costs and expenses, including [costs and attorneys' fees] arising from the conduct or management of the business conducted by Tenant." (Amended Cross-Claim, ¶ 14, Ex. C, art. 24.) Under Illinois law, the elements of a claim for breach of contract are "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Catania v. Local 4250/5050 of Communications Workers of America*, 359 Ill. App. 3d 718, 724, 834 N.E.2d 966, 971 (2005). After alleging that Intrigue has a valid contractual obligation to indemnify and pay Harlem-Irving's costs of defense for "any and all" claims "arising from the conduct or management" of Intrigue's business, Harlem-Irving alleges that Intrigue has breached the agreement by failing to fulfill Harlem-Irving's requests for indemnification. (*Id.*, ¶¶ 15, 16.) On its face, the cross-claim appears to set forth the necessary elements of a claim for breach of contract under Illinois law as summarized in the passage from *Catania* quoted above.

Intrigue does not take issue with the sufficiency of Harlem-Irving's pleadings. Rather, Intrigue's motion to dismiss argues that the indemnification agreement is unenforceable under Illinois law because "[i]t would be against public policy to require Tenant to indemnify Landlord for the intentional conduct of Landlord's own agents." (Intrigue's Mot. to Dismiss at 5.) In making this argument, Intrigue relies on Section 705/1(a) of the Illinois Landlord and Tenant Act, which provides that "every covenant, agreement, or understanding . . . exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor . . . shall be deemed to be void as against public policy." 765 ILCS 705/1(a).

Illinois law distinguishes between indemnification clauses, which shift the risk of potential costs and damages between the parties, and exculpatory clauses, which deprive one party of the right to seek damages from the other. *See Economy Mech. Indus., Inc. v. T.J. Higgins Co.*, 294 Ill. App. 3d 150, 154, 689 N.E.2d 199, 202 (1997). While Section 705/1's plain language suggests that it only bars clauses exculpating a landlord from liability for its own negligence, "it has been construed as also prohibiting certain lease *indemnification* provisions." *Id.* (emphasis in original). The rationale for this interpretation is that both types of clauses "have the same effect [because] the landlord does not pay." *McMinn v. Cavanaugh*, 177 Ill. App. 3d 353, 357, 532 N.E.2d 343, 345 (1988). The court in *McMinn* held that the express prohibition against exculpating landlords from liability for their own negligence "by clear and necessary implication" must apply to indemnification agreements that operate to shift the same type of liability away from the landlord. *Id.* Therefore, the fact that the clause at issue in this case is an

indemnification clause rather than an exculpatory clause does not necessarily remove it from the domain of Section 705/1's prohibition.

Ultimately, the indemnification/exculpation issue is moot because the statute is inapplicable to the facts of this case. By its terms, Section 705/1 applies only to agreements involving the negligence of the lessor. Illinois courts have reached different conclusions on the applicability of the statute to indemnification for contract claims. Compare *Madigan Bros., Inc. v. Melrose Shopping Ctr. Co.*, 198 Ill. App. 3d 1083, 1087, 556 N.E.2d 730, 733 (1990) and *Zion Indus., Inc. v. Loy*, 46 Ill. App. 3d 902, 911, 361 N.E.2d 605, 611 (1977) (holding that the statute is limited to actions arising out of negligence) with *Economy*, 294 Ill. App. 3d at 153-54, 689 N.E.2d at 201-02 (holding that the statute applies to contract and negligence claims). The narrow reading of the statute as limited to negligence actions appears to be superior in several respects. First, it is in accord with the principle that "[i]f the language [of a statute] is clear, the court must give it effect and should not look to extrinsic aids for construction," *In re Marriage of Logston*, 103 Ill. 2d 266, 277, 469 N.E.2d 167, 171 (1984), and the related rule that statutes in derogation of the common law (which allowed exculpatory clauses) should be strictly construed. *Madigan Bros.*, 198 Ill. App. 3d at 1087, 556 N.E.2d at 733. Furthermore, *Economy*, which expanded the statute's reach to contract claims, dealt with a plaintiff/landlord's contractual claim for indemnification for workers' compensation payments that resulted from physical injuries suffered by the plaintiffs' employee after an accident on the leased premises. 294 Ill. App. 3d at 152, 689 N.E.2d at 200-01. Therefore, while the claim may nominally have been a contract claim, the effect of enforcing the agreement in *Economy* would have been to allow a landlord to escape liability for an injury caused by negligence. All indemnification cases will involve at least one

contract: the contract by which one party agrees to indemnify the other. The relevant inquiry is the nature of the liability indemnified against.

Even if Section 705/1 does apply to contract claims as well as negligence claims, the relevant question in this case is still not answered. In order to prevail on its argument, Intrigue must show that indemnification for intentional torts is barred, because Smith is suing Harlem-Irving based on the torts of false imprisonment, assault, battery, malicious prosecution, and intentional infliction of emotional distress. The parties have not provided, and the Court has not found, any Illinois case holding that Section 705/1 applies to intentional torts. Intrigue does cite a case, *Moss v. Hunding*, 27 Ill. App. 2d 189, 194-95, 169 N.E.2d 396, 399 (1960), in which the court held that interpreting a lease to relieve the lessor from liability for intentional torts would be "unreasonable and oppressive." The Court does not find this precedent decisive. *Moss*, which was decided in 1960, predates the enactment of 765 ILCS 705/1. *See Zion*, 46 Ill. App. 3d at 910, 361 N.E.2d at 611. The Illinois legislature could have codified the rule in *Moss* by including a reference to intentional torts, but did not. As discussed above, the statute is in derogation of the common law and will be strictly construed according to its plain meaning. Therefore, the Court cannot ignore the absence of any reference to intentional torts in the statute. Furthermore, the court in *Moss* based its statement that the exculpatory clause was "unreasonable and oppressive" on the circumstances of that case, which involved a landlord and a residential tenant who was injured by falling plaster. Here, the circumstances are different, as the lease agreement involves commercial real estate and the parties are sophisticated business entities. It is not apparent that the same "oppression" that existed in *Moss* could be found here. Finally, the Illinois Supreme Court has specifically rejected the argument that an agreement to indemnify a

party for intentional torts is void as against public policy, though the persuasive power of this precedent is slightly diminished because the case did not involve a landlord-tenant situation. *See Dixon Distrib. Co. v. Hanover Ins. Co.*, 161 Ill. 2d 433, 445-47, 641 N.E.2d 395, 401-02 (1994).

Intrigue's motion ultimately rests on the argument that, if indemnification for claims based on a landlord's negligence is against public policy, then indemnification for intentional torts that the landlord actually chooses to commit should be all the more objectionable. This argument has a certain intuitive appeal. However, it conflicts with well-established principles of statutory interpretation, and what Illinois Supreme Court precedent there is in the field of indemnification for intentional torts suggests that such an agreement would not be void. If an extension of Section 705/1 to cover intentional torts is warranted, it is the Illinois legislature, not this Court, that must make the change. Because the plain language of 765 ILCS 705/1 indicates that the prohibition applies to negligence claims only, the Court finds that Article 24 of the lease agreement is not void under Illinois law. Therefore, Harlem-Irving's cross-claim based on Article 24 states a claim upon which relief can be granted, and Intrigue's motion to dismiss is denied.

## B. Article 23

Article 23 of the lease is nearly the same as Article 24, and is intended to protect Harlem-Irving from liability arising out of Intrigue's business operations. The distinction is that Article 24 is a pure indemnification clause, while Article 23 obligates Intrigue to maintain an insurance policy that will cover Harlem-Irving's potential liabilities.[1] Harlem-Irving alleges that

---

[1] This distinction is not apparent from the Amended Cross-Claim, which omits any mention of the word "insurance" in discussing Article 23. (Amended Cross-Claim, ¶ 13.)

Intrigue has not obtained the necessary insurance. Therefore, Harlem-Irving has pleaded a claim for breach of contract. Intrigue's motion to dismiss does not deal with Article 23 separately from Article 24, so the Court is left to conclude that Intrigue's arguments are the same for both Articles. Because the Court has already found that Article 24, providing for indemnification, is enforceable, it follows that Article 23, requiring insurance for the purpose of indemnification, is also enforceable. Therefore, Intrigue's motion to dismiss Harlem-Irving's claim for breach of Article 23 of the lease is denied.

### III. Conclusion

For the reasons stated above, Intrigue's motion to dismiss is denied.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: March 12, 2008.